UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SEAN DAVID SCHULTZ,

       Plaintiff,

v.                Case No. 23-cv-1545-pp

WAUPUN CORRECTIONAL INSTITUTION, *et al.*,

       Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

---

  Plaintiff Sean David Schultz, who is incarcerated at Waupun Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants were aware of but disregarded the risk of harm that the plaintiff posed to himself. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I. Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

  The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then

must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On December 11, 2023, the court ordered the plaintiff to pay an initial partial filing fee of $1.28. Dkt. No. 6. The court received that fee on January 8, 2024. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.    Screening the Complaint**

    A.    Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

2

Case 2:23-cv-01545-PP    Filed 03/12/24    Page 2 of 11    Document 11

"accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The complaint names as defendants Waupun Correctional Institution, the Wisconsin Department of Corrections, Sergeant Stoffel,[1] Officer McGuiness and Sergeant Reynolds. Dkt. No. 1 at 1–2. The plaintiff alleges that the defendants work at Waupun. Id. at 2.

---

[1] In the caption of the complaint, the plaintiff refers to Stoffel as an "officer," but in the list of defendants and in the body of his complaint he refers to her as a "sergeant." The court will refer to her as a sergeant.

The plaintiff alleges that at about 8:30 a.m. on July 23, 2023, he pressed his in-cell intercom button and told Sergeant Stoffel that he was "suicidal" and that he had "a razor." Id. at 3. He says he "was immediately cut off by her before [he] could finish speaking" and that Stoffel told him, "Okay, do it already," laughed and hung up. Id. The plaintiff says he repeatedly pressed his emergency button for help, and that five other incarcerated persons pushed theirs, too. Id. He asserts that Stoffel hung up on three other people and told two others "Okay" when they told her that the plaintiff was suicidal. Id.

About sixteen minutes later, Officer McGuiness came to the plaintiff's cell. Id. at 3–4. His body camera was recording. Id. at 3. The plaintiff told McGuiness what Stoffel had said to him. Id. He also told McGuiness that he was suicidal, that he had a razor and that he wanted to go to observation status. Id. He says that McGuiness left his cell. Id. The plaintiff "repeatedly banged on [his] door, saying that he "was suicidal." Id. He says that staff ignored him and ignored other incarcerated persons who "tried to get staff to [him]." Id.

The plaintiff alleges that at 9:30 a.m., "[a]fter an hour of being ignored by CO's," he began to cut himself while repeatedly pressing his emergency button. Id. About twenty minutes later, Stoffel answered him on the intercom, and he told her that he had "cut [him]self multiple times," he "need[s] a nurse" and he needs to "be pulled out." Id. The plaintiff alleges that Stoffel ignored him, and that no staff came to his cell until around 10:30 a.m., about an hour after he started cutting himself. Id. McGuiness returned to the plaintiff's cell, again

4

wearing his body camera. Id. The plaintiff told him that he "ha[d] cuts, [he was] bleeding, [he] need[ed] a nurse to clean [his] wounds." Id. McGuiness allegedly responded, "No problem." Id. But the plaintiff says he remained in his cell. Id.

The plaintiff says he notified McGuiness again at 11:49 a.m. and 12:08 p.m. Id. McGuiness had his camera recording both times but both times he ignored the plaintiff's requests. Id. McGuiness eventually told the plaintiff that "Sgt Reynolds was told everything." Id. But the plaintiff says that he "was left in [his] cell bleeding from razor cuts until 6pm that day." Id. He says staff ignored his claims of self-harm, even after he cut himself. Id. He says they never "put [him] in suicide watch observation," even though the "law states they have to." Id.

The plaintiff claims that correctional officers at Waupun "don't care about [his] safety or others." Id. He says that the Wisconsin DOC "has known for decades, and [Waupun] continues to allow it to happen." Id. He says this "same behavior continues, and if it has continued for decades, it[']s being condoned." Id. at 5. He asserts that being ignored "violated [his] rights, and has caused [him] emotional distress, by nothing being done to these CO's even after winning [his] Inmate Complaint to this institution." Id. He says he notified the security director, the Health Services Unit and the warden. Id. He says that "[a]ll camera, intercom and paperwork is preserved and exhausted." Id.

The plaintiff seeks "compensation in form of money" from Waupun and the three officers named in the complaint "to assist in future behavior, that is similar, to end." Id. at 6. He also seeks a jury trial and recovery of his costs. Id.

C.   <u>Analysis</u>

The court analyzes the plaintiff's allegations under the Eighth Amendment, which prohibits cruel and unusual punishments. <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). An Eighth Amendment claim consists of both objective and subjective components. <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must show that he "is incarcerated under conditions posing a substantial risk of serious harm." <u>Id.</u> The risk of harm may come from an incarcerated person's act or threat of self-harm "up to and including suicide." <u>Miranda v. County of Lake</u>, 900 F.3d 335, 349 (7th Cir. 2018). The subjective component requires the plaintiff to demonstrate that prison officials acted with the requisite intent, that is, that they had a "sufficiently culpable state of mind." <u>Farmer</u>, 511 U.S. at 834. The plaintiff must show the officials' "actual, personal knowledge of a serious risk, coupled with the lack of any reasonable response to it." <u>Ayoubi v. Dart</u>, 724 F. App'x 470, 474 (7th Cir. 2018) (citing <u>Farmer</u>, 511 U.S. at 837, 844–45).

The plaintiff alleges that he pressed his intercom to notify Sergeant Stoffel that he had a razor and was suicidal. He says Stoffel would not even let him finish his statement before telling him to "do it already." According to the plaintiff, other incarcerated persons tried to call Stoffel for help, but she dismissed them. Officer McGuiness came to the plaintiff's cell at least three times wearing a body camera, and the plaintiff told him each of those times that he was suicidal, had a razor and needed to be pulled from his cell and sent to suicide watch or observation. The plaintiff says McGuiness

acknowledged his concern but did not pull him from his cell. The plaintiff says McGuiness told him that Sergeant Reynolds "was told everything," which suggests that Reynolds may be McGuiness's superior officer to whom he reported the plaintiff's concerns. But the plaintiff says he remained in his cell until 6:00 p.m.—nearly ten hours after he first notified Stoffel that he was suicidal.

These allegations are sufficient to state a claim against Sergeant Stoffel, who the plaintiff alleges repeatedly ignored his concerns, even after he began to cut himself. The court also will allow the plaintiff to proceed against Officer McGuiness, who the plaintiff says acknowledged his suicidal feelings and self-inflicted cuts but did not remove the plaintiff from his cell or provide medical treatment. The discovery eventually may reveal that McGuiness did all he could by notifying Sergeant Reynolds of the situation. But at the pleading stage of a case, the court must accept the allegations in the complaint as true for purposes of screening.

The court also will allow the plaintiff to proceed against Reynolds. The plaintiff says that McGuiness told him that Reynolds "was told everything" about the plaintiff's suicidal thoughts and the cuts he self-inflicted, but that Reynolds did not take any action. Although this claim is slim, the complaint alleges enough to suggest that Reynolds knew about the plaintiff's statements that he had a razor and was suicidal and the cuts he inflicted, yet she took no action to stop the plaintiff from cutting himself or treat him after he did. This is a sufficient basis to conclude that Reynolds had "actual, personal knowledge

7

of" the risk that the plaintiff posed to himself but failed to take any "reasonable response to it." Ayoubi, 724 F. App'x at 474.

The plaintiff also names Waupun and the Wisconsin DOC as defendants. He claims Waupun officers have disregarded the safety of persons incarcerated there, and that the DOC has known about this issue "for decades" but has taken no action. The court infers that the plaintiff wants to proceed on a claim that Waupun and the DOC have allowed officers to disregard the health and safety of persons incarcerated at Waupun and/or condoned their inaction. But neither the prison nor the DOC is a "person" who may be sued under §1983. Myers v. Ind. Dep't of Corr., 655 F. App'x 500, 503 (7th Cir. 2016) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 64 (1989)). The court could construe these claims as if the plaintiff had made them against the State of Wisconsin, see Will, 491 U.S. at 71, but a state may not be sued for money damages, Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 617 (2002); Williams v. Wisconsin, 336 F.3d 576, 580 (7th Cir. 2003). Because damages are the only relief that the plaintiff seeks, he may not proceed against the State of Wisconsin. The court will dismiss Waupun and the DOC as defendants.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DISMISSES** Waupun Correctional Institution and Wisconsin DOC as defendants.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on Sergeant Stoffel, Officer McGuiness and Sergeant Reynolds at Waupun. Under the informal service agreement, the court **ORDERS** those defendants to respond to the complaint within 60 days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$348.72** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Waupun Correctional Institution.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and completing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner

---

[2] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 12th day of March, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
Chief United States District Judge**